DORE, Judge.
On January 23, 1948, at about 8:30 at night, at the intersection of Buchanan and Cypress Streets in Lafayette, a collision occurred between a 1947 Kaiser automobile belonging to Louis C. Bristow and being driven by him, and a Dodge truck belonging to Nunzia J. Varisco, and being driven by Frank Varisco. As a result of the collision, the Bristow automobile was damaged to the extent of $555.15 and under a collision insurance policy in his favor from Fidelity and Guaranty Fire Corp., the plaintiff, Bristow was paid the sum of $505.15, being the full damage less $50 deductible under the terms of the insurance policy. The plaintiff sues for the said sum of $505.15, plus legal interest and costs, the said Nunzia J. Varisco, owner of the truck involved in the accident, and his insurer, the Great American Indemnity Company, alleging that the collision and resulting damages were caused entirely by the gross negligence of Frank Varisco, who was driving the truck in the course and scope of his employment by Nunzia J. Var-isco. The specific acts of negligence charged are:
“(a). Driving at an excessive and reckless rate of speed in view of the condition of the streets at the time, which were very icy and slippery;
“(b). Failing to maintain a proper lookout;
“(c). Failing to have his truck under proper control;
“(d) Driving his truck in such a reckless manner that he was unable to bring it under control, or to bring it to a complete stop in order to avoid the collision.”
The petitioner alleges further that Bris-tow was entirely free from negligence, and in the alternative, that if he was guilty of any negligence at all, which is denied, that petitioner is still entitled to recover for the reason that Frank Varisco had the last clear chance of avoiding the accident.
The defense is to the effect that Frank Varisco was guilty of no negligence whatsoever and that he was operating his truck at a slow rate of speed because of the dangerous condition existing caused by the coating of ice on the streets; that the truck was in perfect mechanical condition, and that he was driving on his own side of the street and stopped the truck on the right side of the street as soon as he saw the Bristow car approaching, out of control; that the accident was caused by the negligence and faulty driving of Bristow in that he was operating h»is car too fast under the circumstances, failed to keep a proper lookout for approaching traffic, lost control of it on the icy street to the extent that it skidded or veered on to his left or the wrong side of the street, where it hit the stopped truck. In the alternative, the defendants plead contributory negligence.
After trial of the case, the District Court, for oral reasons (which appear typed in the record), found that the accident was caused by the negligence of Frank Varis-co, and accordingly, granted judgment as prayed for. The defendants have appealed.
After this case was argued and submitted, but before our final decision of the case, the defendants filed an exception of no right of action predicated upon the specific provisions of Act 55 of 1930, which provides a right of direct action under certain circumstances, contending that such direct right of action is limited to an injured person or his heirs and not to a subro-gee of said injured person. They cite as authority for their position, the case of *228 World Fire & Marine Ins. Co. v. American Auto Ins. Co., La.App., 42 So.2d 565.
Examination of the cited case fails to show wherein it is apposite to the case at bar. In the cited case, the Court was very careful to point out that the plaintiff, an insurance company, as subrogee of its insured, sought to recover, by direct action, against the insurer of the owner of a motor truck which was involved in an accident with plaintiff’s subrogor’s automobile; in other words, the plaintiff brought the suit clearly under the provisions of Act 55 of 1930. In the case at bar, plaintiff, an insurance company a's subrogee of its assured, is seeking to recover from Nunzia J. Varisco, the owner of the alleged offending motor vehicle. Act 55 of 1930, clearly has no application to a suit brought against a tort feasor himself 'but relates only to a direct action against the insurer alone. Thus Act 55 of 1930 cannot have any bearing upon the suit against defendant Nunzia J. Varisco.
Furthermore, in Article 3 of the petition, it is alleged that the Great American Indemnity Company was the insurer of Nun-zia J. Varisco in that it had written its policy of insurance in favor of said Varis-oo which covered the particular offending motor vehicle, and that the said policy was in full force and effect at the time of the accident, and consequently, the insurance company and the said Varisco were responsible in solido for the amount of the damage suffered by the plaintiff. In answer to these allegations, the defendants, in their answer, state: “The defendants admit that prior to January 23, 1938, (the date of the accident), the Great American Indemnity Company had issued to Nunzia J. Va-risco, a policy of insurance, generally called a public liability policy, covering the operation of a Dodge truck, (the alleged offending truck), bearing Louisiana license number 58-25, and the said policy was in full effect at the time of the accident referred to in plaintiff’s petition.”
Upon these admissions, it is clear that any judgment rendered against Varisco must, of necessity, be paid by the insurance company under the terms of the policy, whether the insurance company is made • a party to the suit or not. As previously stated, we are of the opinion that Act 55 of 1930 has no application whatsoever to a case of this kind where the owner of an offending motor vehicle and tort feasor himself is a party defendant to the action, but the provisions of the Act relied upon in this case for the maintenance of the exception relates solely to the right to institute a suit against the insurer company alone. The cited case supra' relates only to the right of action under the said Act against the insurer company alone and has no reference whatever to a situation as herein presented.
For these reasons, the exception of no right of action is overruled.
A review of the evidence shows that the accident occurred at a five-way intersection and it is clearly shown that the streets at the time were coated with ice, and since the accident occurred at night, it readily can be seen that it was incumbent on both drivers to proceed with great care. The main question involved is whether or not the plaintiff has sustained the burden of proving that its assured did proceed with the care necessary and sustained the burden of proving that the accident was caused solely by the negligence of the truck driver. As far as the amount of damage is concerned, the time of the accident, and the condition of the streets, these are admitted by stipulation. In accordance therewith, the accident happened at about 8:30 or 9:00 o’clock, after dark, the streets were covered with a coating of ice and the damages sustained by plaintiff amount to the sum of $505.15.
In order to determine liability, it seems proper to summarize the testimony contained in the record:
Louis C. Bristow, the driver and owner of the Kaiser automobile involved, testified that shortly prior to the accident, he was driving on Buchanan Street in a Southerly direction at a rate of speed of bétween twelve and fifteen miles an hour; that the lights on his automobile were burning, that he was driving on his right lane of traffic, that; “As I approached the intersection *229 of Cypress and Buchanan, I noticed the lights of a vehicle on my left on Cypress and I slowed down my car and actually stopped before I had entered the intersection. Just at this moment, I noticed the lights of this other vehicle swing in a semi-circle direction out of Cypress Street, that is, from my left out of Cy--press Street, and the vehicle collided with the front end of my car.”
He testifies further that at the time he stopped he was approximately eighteen to twenty feet from the left curb of Buchanan Street; that is, to his left; that after the accident, traffic continued to pass both ways on Buchanan Street, to the left of his parked car.
Mr. G. L. Pierret, witness for plaintiff, testified that when the accident happened he was a half block behind the Bristow car; that he had followed Bristow just far enough behind him to be able to stop on the icy roads all the way from Crowley and that he does not think he ever got over twelve or thirteen miles an hour. He testifies that he saw the automobiles after the collision and in explaining the position of the vehicles after the collision, states that, “There was enough room on the left of Bristow’s car for two-way traffic to pass.” He states further that, “The front of the truck was all mixed up with his (Bristow’s) automobile. It was just a head-on collision. I think the bumper of the truck was into the body of the car.” His testimony is clearly to the effect that the collision was in the lane of travel in which the Bristow car belonged.
This witness also testified that he talked to both drivers right after the accident and that the truck driver admitted that his truck slid into the automobile, “but Bristow had been so nasty about the whole thing, I would take $20,000.00 and spend it rather than see him recover a nickel from the insurance company.”
Larry G. Logan, witness for plaintiff, testified that he witnessed the accident while 'he was at the corner of Buchanan Street getting ready to cross Buchanan Street to go down Cypress Street. Upon being asked to state in his own word's exactly what he saw, he stated: .
“A. Well, the truck, was coming down Cypress heading North and .the car was coming up from, I guess it is a continuance of Cypress, coming South and he was driving very slow, and the truck wasn’t going too fast and I was about to cross the street and the car stopped and I guess he was deciding to see which way the truck was going and the truck swerved around. I thought he was going straight and he turned around and before he realized the car was there he tried to stop and slid on the ice. There was a lot of ice on the ground.
“Q. Did he hit the car? A. Yes.
“Q. Was the car stopped at the time? A. I think it was.
“Q. Approximately how fast did you estimate the truck was traveling at the time of the accident ? A. I figure-he was going around twenty miles an hour.
“Q. Can you estimate the distance that the automobile was from the intersection or its position? A. He was a good ways from the intersection. It is a sort of big circle. It was a wide intersection and he stopped about the middle of it.
“Q. Where, in relation to the center of Buchanan Street, was the automobile of Mr. Bristow at the time you saw it? A. Well, it was just about at the center. It is pretty hard to explain, but it is a big kind of intersection there and he was in the center of it where he had stopped.
“Q. Approximately how far would you say that his automobile was from his left ditch? A. About that I don’t know. I could not give you anything definite because it has been a good year, but I guess he was about six, eight or nine feet. Something like that. I cannot give you anything definite.”
Frank Varisco, called toy defendants, testified that as he was traveling along Cypress Street and getting ready to turn at the intersection, he was in first gear and going about four and a half to five miles an hour, that he was traveling in that manner because of the ice on the ground, *230 that when he got to this big intersection and saw that Bristow was coming “I knew he was going to jump the ditch or turn one way or the other. I stopped right there. I didn’t want to take a chance.”
He states that when he stopped his truck he was about fifteen feet into the intersection and that the Bristow car coming South on Buchanan skidded to the left and struck the right bumper of his truck; that no damage whatever was done to the truck since merely the right bumper was struck.
He denies having made a statement to Mr. Herret, that his truck skidded into the car, but admits that he and Mr. Bristow had some unpleasant words and that Bris-tow called him a “no-good-son-of-a-bitch”, hut that he himself did not get mad. He states, “No, I was going to get bad (mad), but I thought with all that ice I might break one of my arms and hurt myself.” He admits that when Mr. Pierret came along he acted as a peacemaker and tried to keep trouble down.
John Hebert, a City Policeman of Lafayette, testified that as part of his official duties he investigated the accident and went to the scene and thereafter made a sketch of the position of the automobiles, which sketch is marked Defendant A, and according to his testimony, the accident occurred approximately in the center of the intersection of Cypress and Buchanan and on Bris-tow’s lefthand side of Buchanan. His evidence contradicts the testimony of the other witnesses as set out hereinabove and as set out in other sketches introduced in connection therewith, marked P-1, P-2, P-3 and P-4.
As is usually the case in these automobile collision cases, the evidence is contradictory, but it is apparent that the trial judge concluded that the version of the accident as given iby plaintiff’s assured was correct and was sufficiently corroborated by the testimony of Mr. Pierret and of Mr. Logan, both neutral witnesses. Their testimony is contradicted somewhat by Officer Hebert, but he was not actually present at the scene when the accident occurred, as were the other two witnesses. We are particularly impressed by the testimony of Mr. Pierret to the effect that right after the accident traffic continued in both lanes to the left of the Bristow automobile, which had been hooked on its left side by the bumper of this heavy truck.
It is our conclusion that the preponderance of the evidence is to the effect that the truck ran into the Bristow automobile due entirely to the negligence of the truck driver in failing to keep a proper lookout under the existing circumstances, and the judgment appealed from is correct.
For these reasons, the judgment appealed from is affirmed.
JONES, Judge ad hoc, dissents in so far as the overruling of the exception of no right of action is concerned, and. is of the opinion that the Defendant Insurer should be released from this suit.