[Civ. No. 5732.   Fourth Dist.   Nov. 13, 1958.]

LUIS MARTINEZ, Plaintiff and Appellant, v. KENNETH J. DE LOS RIOS et al., Defendants; UNITED STATES BENTONITE COMPANY (a Copartnership) et al., Defendants and Appellants.

Thomas M. Eckhardt for Plaintiff and Appellant.

Willedd Andrews and J. Edward Haley for Defendants and Appellants.

SHEPARD, J.—This action arises from alleged trespass on mining claims; unlawful conversion of ore therefrom; damage to plaintiff's mine improvements; for an accounting; to quiet title of plaintiff in and to said claims; and for injunction.

After extensive trial, the court found in general substance (trial court finding numbers) (1) that plaintiff is the owner of the mining claims as alleged in plaintiff's complaint, being six in all and being named "Liberty," "Liberty No. 1," "Liberty No. 2," "Liberty Fraction No. 3," "Rosa," and "Bentonite"; (3) that defendants did without plaintiff's consent take 1,200 tons of Bentonite ore from the said claims; (4)

that plaintiff's mine improvements and workings were damaged by defendants in the sum of $1,100; (5) that the Bentonite ore so removed was of the gross value of $15 per ton; (6) that the acts of the defendant Kenneth De Los Rios (lessee of defendants) were not malicious or oppressive; (7) that the acts of defendant United States Bentonite Company, a copartnership, Walter O. Heinze, Andy McGehean, Willedd Andrews, individually and as copartners, were done maliciously, wilfully and oppressively with full knowledge of plaintiff's rights in the premises; (8) that plaintiff had done all assessment work required of him by law; (9) that the cost of producing and marketing the Bentonite ore was $8.00 per ton; (10) that plaintiff did not wait an unreasonable time to bring this action; (11) that the said ore so removed was wrongfully converted to defendants' use; (12) that plaintiff did not interfere with the operation of any of defendants' claims; (13) that plaintiff is a citizen of the United States; (14) that plaintiff's title to the claims described in plaintiff's complaint was theretofore quieted by a judgment 23 October, 1940, in action Number 43759, Superior Court of San Bernardino County; (16) that defendants now claim some interest therein.

From the foregoing findings the trial court concluded that plaintiff was entitled to a judgment for $1,100 for damages to mine workings and improvements; for $8,400 for value of ore removed and converted from plaintiff's claims; for exemplary damages in the sum of $1,500; that plaintiff's title in and to the described claims be quieted in plaintiff; for an injunction forbidding defendants to further trespass or interfere on said claims; and that cross-complainants take nothing.

From the ensuing judgment in accord with these findings defendants appeal.

Plaintiff cross-appeals from that portion of the judgment which allows to the defendants a deduction of $8.00 per ton for expense of transportation, milling and marketing.

The only points made by the defendants on this appeal lie in their challenge to the sufficiency of the evidence to support Findings 3, 4, 7, 10 and 11, and their contention that the court should have defined boundary lines.

After a careful examination of the entire record in this case we are forced to conclude that all of the findings complained of by the defendants are amply supported by the evidence.

The title of plaintiff to claims involved had been liti-

gated in the year 1940 in the Superior Court of San Bernardino County in case Number 43759 (*Herrington* v. *Martinez*); defendant Willedd Andrews was a partner actively engaged in the management of the partnership business of United States Bentonite Company during all of the times here complained of; said Andrews was at all times fully aware of the contents and effect of said judgment by which title had been quieted in plaintiff and plaintiff's former associate Becker (Becker assigned his interest to plaintiff); defendant Andrews had been on the property and had seen the boundary markers before and during the time the ore was being taken; defendant Rios related that all the ore taken was from the "Glory Hole," which was on plaintiff's claim; defendant Andrews had been instrumental in filing claims in the name of United States Bentonite Company, which superimposed upon and blanketed the claims of plaintiff, this being done after full knowledge of the judgment in said case Number 43759; defendant Andrews was instrumental in the drafting of a lease of the claims of United States Bentonite Company to defendant Rios, authorizing defendant Rios to take ore from property owned by plaintiff; and after the discovery by Andrews that Martinez was protesting the taking of the ore defendant Andrews assisted defendant Rios in preparing claims which would themselves, when filed, also blanket plaintiff's claims. From the entire record it appears that defendant Andrews was at all times acting on behalf of the defendant partnership, United States Bentonite Company. Plaintiff protested to defendants against the taking of the ore, and even after protest ore continued to be taken. Plaintiff did not have sufficient money to immediately bring an action against the defendants, but did bring one about one and a half years after his first knowledge of the trespass and taking.

From the foregoing it is clear to us that the court's finding of unlawful taking by all defendants and of the willful, malicious and oppressive character of the taking by these appellant defendants was amply justified.

The evidence as to the amount taken ranged from a few tons to the 1,200 tons testified to by defendant Rios and estimate of 1,300 tons made by plaintiff, and an admission made by these appellant defendants by way of their cross-complaint of "several thousand tons of Bentonite." In our opinion, the evidence was thus amply sufficient to support the finding that 1,200 tons of ore were taken.

On all of these matters there exists a degree of conflict in the evidence, but the rule is thoroughly established that weighing the evidence is the duty of the trial court alone, and that where there is a substantial conflict the decision of the trial court will not be disturbed. (*High* v. *Pacific Gas & Elec. Co.*, 52 Cal.App.2d 701, 709 [3] [126 P.2d 911, 127 P.2d 588]; *Bailey* v. *County of Los Angeles*, 46 Cal.2d 132, 137 [3] [239 P.2d 449].)

The cross-appeal of plaintiff presents only one point. It challenges the conclusion of law by which the trial court allowed a deduction of $8.00 per ton for expenses in transportation, milling and marketing.

This point presents a somewhat vexing question. The court found that the gross value of the Bentonite clay at the time of its mining and removal was in the sum of $15 per ton; that the cost of producing and marketing was $8.00 per ton; that the taking by these defendants was malicious, willful and oppressive and with full knowledge of the rights of plaintiff and the injury to be done to plaintiff. Plaintiff claims that under the law the trial court should not have deducted such costs for processing and marketing.

With this contention we are compelled to agree, for the rule is well recognized and of long standing.

In *Dolch* v. *Ramsey*, 57 Cal.App.2d 99 [134 P.2d 19], the court reviews the rule in the following language:

"We must hold that defendant had constructive notice that the claim had been patented and belonged to plaintiff; that he was a trespasser when he went on the property and removed gold ore that belonged to another. Under these circumstances he did not act in good faith without knowledge that the mine was the property of another. Under such circumstances he was liable for the value of the gold he took, without any deduction for his expenses in wrongfully taking it."

Again, in *Union Oil Co.* v. *Reconstruction Oil Co.*, 20 Cal. App.2d 170, 185 [66 P.2d 1215], the court states the rule:

". . . [If] the trespass was intentional and with knowledge of plaintiff's rights, defendants would be chargeable with the value of the mineral after reduction without any deduction for expenses of mining and milling."

The rule is also well recognized in many other authorities. (36 Am.Jur. 445; 33 Cal.Jur.2d 294; 58 C.J.S., 240; *Lightner Mining Co.* v. *Lane*, 161 Cal. 689 [120 P. 771, Ann.Cas. 1913C 1093].)

It would appear, therefore, that the trial court should have

mathematically calculated the damages at $15 per ton, which would have been a total of $18,000 instead of the sum fixed in the judgment of $8,400.

However, we are now confronted with the problem that the court allowed $1,500 exemplary damages, and we are also confronted with the fact that the rule that a defendant may not be allowed his expenses of producing and marketing is grounded on the principle of punitive damages and derives authority from the provisions of Civil Code, section 3294. (*Lightner Mining Co.* v. *Lane,* 161 Cal. 689, 705 [120 P. 771, Ann.Cas. 1913C 1093] ; *Union Oil Co.* v. *Reconstruction Oil Co., supra.*)

■ From an examination of the entire record it is apparent that the trial court did not intend to award two separate types of punitive damages, and since the result of our judgment is that the expense of ore production cannot be allowed as a deduction, and since the source of the court's authority in granting that relief to a plaintiff lies in said Civil Code, section 3294, it appears to us that the special award of $1,500 should fall.

■ Furthermore, it is a well recognized rule that exemplary damages ought to in all cases be reasonable. In our opinion, the rule which deprives defendants here of credit for expenses of production visits upon the heads of the defendants a sufficiently strong penalty already without adding the special amount of $1,500. (*Luke* v. *Mercantile Acceptance Corp.,* 111 Cal.App.2d 431, 438 [244 P.2d 764].)

The judgment of the trial court is modified so as to strike therefrom that portion which reads : "IT IS FURTHER ORDERED, ADJUDGED AND DECREED that plaintiff have and recover the sum of $1,500.00 exemplary damages against the defendants U. S. BENTONITE COMPANY, a co-partnership, Walter O. Heinze, Andy McGehean and Willedd Andrews," and it is further ordered that the portion of the judgment decreeing recovery of $8,400 contained in the third paragraph of the judgment is amended to read $18,000.

The judgment in all other respects is affirmed. Plaintiff to recover costs on appeal.

Griffin, P. J., and Coughlin, J. pro tem.,* concurred.

The petition of defendants and appellants for a hearing by the Supreme Court was denied January 7, 1959.

*Assigned by Chairman of Judicial Council.